First case this afternoon is case number 411-0276. That's People v. Vilchiz. For the appellant, we have Susan Wilhelm and for the appellee, John Tiefen. You may proceed. May it please the court, counsel, I'm Susan Wilhelm with the Office of the State Appellate Defender and I represent the defendant, Malacuis Vilchiz. On the morning of May 31, 2010, a tractor trailer driven by Moises Torres was stopped by a state trooper for a Level 3 inspection. Vilchiz was in the trailer. He did not have a license, but he was training the driver on his trip from California to Bolingbrook, Indiana. During the inspection, based on information that he uncovered, the trooper led his canine around the trailer and when the canine alerted, the search recovered cocaine and heroin. Torres and Vilchiz were both charged with controlled substance trafficking and unlawful possession of a controlled substance with intent to deliver. The state filed a motion to consolidate their trials. Torres' counsel filed a motion in opposition and the motion set forth the following facts, which clearly implicated Vilchiz. Torres said that Vilchiz supervised Torres and he set the route and schedule for this trip. He said that while in California, Vilchiz ordered Torres to return to the truck yard to fix a tire that did not need repair. Torres was ordered by Vilchiz to leave the truck yard for 30 minutes. Torres then saw Vilchiz with three unknown men in the truck yard, just like on a previous trip when Vilchiz had ordered Torres to get lost. And again, Vilchiz maintained sole control over the trailer. And counsel for Vilchiz, although not filing his own motion, did adopt this motion and these facts. At the hearing on the motion, the state argued that it wanted to consolidate because it had subpoenaed four witnesses from California and it needed to consolidate out of convenience. And counsel offered to stipulate to this testimony from the California witnesses to make this an easier case. Counsel for Torres asserted, we're pointing the finger directly at Mr. Vilchiz. And in addition to those facts that he had already set forth in his motion, he added a couple. The Vilchiz had the only key to the lock on the back of the trailer and Vilchiz was the only person who inspected the loading of the truck. Counsel for Vilchiz argued that these hearsay statements made by Torres would implicate Vilchiz in the crime and that their defenses were clearly antagonistic. The trial court in written order, however, held that the defenses may be inconsistent, but they were not truly antagonistic because neither defendant specifically implicated the other in the offense. And I'm arguing today that the trial court abused its discretion when it consolidated these two trials because it was clear from the facts set out in the motion and at the hearing that Moises Torres' defense would be to place all the blame on Malachius Vilchiz. What if the hearsay statements, however, ultimately, pursuant to evidence that was presented at trial, found to be false? Mr. Torres was never cross-examined. I thought that there was evidence that showed those statements that he had seen three persons, that he was told to leave while the truck was being loaded. I thought those were shown to be false. The only testimony from Mr. Torres' statements came in through Officer Candler. Officer Candler testified that those were Mr. Torres' statements. Mr. Torres never took the stand. He was never cross-examined. There was nothing presented in opposition. Mr. Vilchiz did take the stand and deny those actions. We had a logbook, correct? I'm sorry? We had a logbook. Yes, we had a logbook. And the logbook showed something different than what Mr. Torres indicated as far as whether or not he actually left the yard and went and got lunch. Is that correct? Yes, he indicated that he stayed and fixed the tire. So the answer to my question is yes, those statements, those hearsay statements were shown at the trial to be false. There was evidence that brought them into doubt, but Mr. Torres himself was never cross-examined on his statements, which came in through Officer Candler. I understand that. Counsel, I have a question. I want to be clear. Of course, I read your brief. Are you asserting that the problem here is that hearsay admissions that implicated your client came in without the benefit of cross-examination and or that the defenses were antagonistic? Are you asserting both? I'm asserting both, Your Honor. I'm asserting, though, the basic premise of my argument is that these trials should have been severed. Had they been severed based on the evidence that they were clearly going to be antagonistic defenses, we would never have had the problem. But you're also asserting that those statements, those hearsay statements, were implicated of your client and shouldn't have come in. Yes. Because you have two different ways that prejudice can occur, so I just wanted to make sure you're asserting both. Is that correct? I am asserting both, and I'm going to start with the second one. Were they both asserted to the trial court? Because it almost appears to me from reading the briefs that the trial court made a decision based upon antagonistic defenses, but maybe didn't even consider the fact that there was no confrontation of the testimony that was put in through hearsay. If we focus only on what we knew at the motion to consolidate, all we know is what is actually in the motion presented to the trial court. The trial court never knew how complicated this issue could become. Mr. Torres could have taken the stand and testified. Then all of his statements would have been subject to cross-examination. Because that did not happen, we end up with the additional type of prejudice. But at the motion to consolidate, it was very clear that these were antagonistic defenses, that they were clearly antagonistic, because Torres was going to blame Vilches as much as he was able. We simply did not know at the hearing how Mr. Torres' statements would come in, and if he would or would not be subject to cross-examination. That was something that we didn't know until trial. When this issue was being addressed, counsel for Torres represented to the court that Torres was going to be pointing the finger directly at Vilches. He was very direct about that. Now that isn't exactly how it played out at trial, because Torres, while he pointed out inconsistencies with Vilches' testimony, and I think he did indicate in closing that Vilches was lying, he didn't directly point the finger at Vilches. I think that's fair to a certain extent, but in opening statements, counsel for Torres stood up and started with an attack. He said that Vilches supervised loading, that Vilches maintained control of the key. He said that Vilches ordered Torres to leave the trailer while he met with three unknown male Hispanics, and he said, and I quote, maybe that's when they put the drugs in the truck, because that was kind of funny. That's a direct, he started off an opening statement saying, it's not my guy. He was over here. It was obviously Mr. Vilches who put these drugs in the trailer with the help from these people. And he continued on this line of defense saying Vilches was the boss, he was in charge of everything, he told Torres what to do, he was the one who was in charge. So his defense was not simply, I don't know what happened. It was, he's the one. Vilches is the one. And that's your characterization of it. And this is where we have to look at the record and view it in its totality. Ultimately, that's your characterization of how the jury perceived it. Torres is saying Vilches did it. And I'm assuming that we're going to hear the counter to that, but it wasn't nearly so direct on the part of Torres that perhaps he was pointing out holes in what Vilches was saying, but perhaps the ultimate takeaway was, if anyone knows anything about how the drugs got there, it would be Vilches. So we'll see in that regard. But in terms of the inquiry for the trial court judge, is it your view that it is what's represented at the time of the motion hearing as opposed to what happens during the course of trial that we should be looking at? I think that if you look at what happened at the time of the motion hearing, you can clearly see that these were presented, this is going to be an antagonistic defense, and he should have not granted the motion to consolidate. There was plenty of evidence at that time to convince him that he should not have sent these two men to trial together. You can look at what happened at trial as illustrative of the prejudice. And we also then end up looking at what happened at the trial when we're looking for harmless, is this harmless error, because we have to go through the facts of trial and ask ourselves, is there overwhelming evidence of Mr. Vilches' guilt? Should the trial court be given some leeway in balancing certain factors? Here, one of the factors presented by the state was that you had witnesses having to be brought in from California. Could the trial court, was it within the trial court's discretion to take that into account in determining that, on balance, there were factors that supported the efficiencies of trying the case together? In light of what might be this potential for antagonistic defenses? Well, first of all, the defense counsel said, we'll stipulate to their testimony. We'll stipulate to these four people's testimonies, so you don't have to drag them all into this. What testimony? Was that ever in the record? He never named the four witnesses. As it is, I would guess it would be Maria DeSandoval and Mr. Zendejas. Yeah, but you're saying that he stipulated. There's nothing that we have in front of us to say to what extent he was going to stipulate. Maybe he wasn't going to end up stipulating at all to what the state wanted to present. So that calls for us to conclude something that isn't in the record. Don't you agree? He did, though, agree to stipulate, Your Honor. He agreed that they would take effort to try to minimize this. And my answer to you would be, what price is a fair trial? At what point can the state simply say, I mean, they brought in two witnesses from California ultimately when they said they were going to bring in four. That's obviously a much lower cost that the trial court didn't get to weigh. Now it's half the cost. If we're going to put a price on a fair trial, what is it? How many witnesses are enough? And again, they offered to stipulate. They could have gone in the other room. They could have drawn up a stipulation. If it was so compelling at that time, and I wish they had, I wish we had that record before us so we would know what the price is. Well, again, I don't want to beat a dead horse here, but there isn't anything in the record to allow us to view it in the light of the extent of the stipulation. If the defense counsel had said, we're going to stipulate to all of these things, then at least we would have it in front of us to determine the propriety of the trial court's ruling. But the state didn't even present that. The state said, we're bringing in four witnesses from California. They didn't name them. They didn't say, we're bringing in Maria DeSandoval for this and Mr. Zendejas for this and two other unnamed people for whatever their testimony would be. They simply assorted, we're bringing in four people. Okay, so it's just not in the record. It's not in the record, and again, it's something that we can't speculate to except that an offer was made to try to mitigate this. Well, counsel, the state is not required to accept the stipulation from the defendant. Sometimes the state thinks it's more important to put the evidence on instead of go with the stipulation. In addition to the concerns Justice Harris has raised, it would seem to me that that argument isn't your best one. I guess I never realized that, again, there could be a price put on having a fair trial. When we have evidence before the trial court of this motion, these defenses are so clearly going to be antagonistic. We are going to be pointing the finger at Mr. Vilches. We are going to bring out these facts in some manner, implicating Mr. Vilches. Counsel, I did not say it's proper to put a price on a fair trial. If you thought that I was suggesting it, that's not what I was suggesting. What I was suggesting is that just because the defendant agreed to stipulate doesn't mean the state is required to accept that stipulation. Okay? Am I clear on that? Yes. Thank you. Counsel, I think the heart of the matter becomes the efforts undertaken by the trial court during the trial to minimize any prejudice. Is it correct that an instruction was given regarding the fact that the statements made by Torres that came in through hearsay of the trooper primarily should not be used against your client? That instruction was given, is that correct? That is correct, that limiting instruction was given. And there is case law, however, that says that limiting instructions are not an adequate substitute for a defendant's constitutional right to cross-examination. And they also look at the fact that a co-counsel's actions are so much more compelling than the actions of the state or even the words of the trial court. These are two people that are sitting together. They are defending together. And when one of them is pointing the finger at the other one, it presents a very clear message to the jury. They don't believe him. The person who is supposed to be on his side doesn't even believe him. And in situations like that, limiting instructions have been found to not be sufficient to protect the constitutional rights of the defendant. Did the state at all argue those statements in suggesting that the jury should find your client guilty? The state did a very good job of keeping this a clean trial. My arguments are not with the state's behavior at all. My arguments are that Mr. Torres' counsel was able to argue these facts repeatedly and cast blame at Mr. Vilches. He was able to say he's the one. He's the person who had the control. He's the person who must be the one. He's the one that met with these three unknown men. And he constantly pointed the finger at my client. And he is the one that made this into an antagonistic defense, not the state. Thank you. Once again, the trial of Mr. Vilches and Mr. Torres, where Torres made multiple statements implicating Mr. Vilches, statements that were never subject to cross-examination, which caused severe prejudice to Mr. Vilches and implicated his rights to due process, confrontation, and the privilege against self-incrimination. Prejudice to the extent that he is entitled to reversal and remand to a fair trial. There simply is not overwhelming evidence of his guilt. If we look through the facts with a fair eye, we see we need overwhelming evidence to create harmless error here. And although the state presented this as an issue of constructive possession, the largest crime in this trial was controlled substance trafficking, a superclass X offense. And that requires that a defendant knowingly bring the drugs into Illinois for sale. Not just that he have them in the trailer, that he knowingly bring them in. And here we have evidence at trial that a latent print was recovered from a lab on one of the eight bags of cocaine. It did not match Torres, and it did not match Vilches. The state didn't run the fingerprint through any national database. It never compared this fingerprint to the people who loaded the truck at Sun Valley Dairy. And there was evidence from Mr. Zandez, the truck loader, that there were times when Mr. Corco, the loader was in the truck by himself, that he did not see him, and Mr. Zandez never went and inspected the load after it was completely filled. Trooper Candler also confirmed that they did not compare this print to that of Maria Sandoval. And again, they never ran it through a database. And there is evidence when asked if he was responsible for the vehicle at the stop, Torres responded that he was responsible, and he said that the load lock on the trailer belonged to him. There is not overwhelming evidence here sufficient to say that the error here of making these men go to trial together when Mr. Vilches was so clearly being blamed by his co-defendant that he did not have a fair trial. We simply do not have overwhelming evidence, and I would ask that this court reverse his conviction and remand for a new trial. Thank you. Thank you, counsel. You will have rebuttal. Mr. Teefee. May it please the court, counsel. My name is John Teefee. I am here on behalf of the state of Illinois. In this case, defendant claims that the trial court abused its discretion by allowing the state's motion for joinder. As a preliminary matter, and I think that this weighs heavily on this court's decision, this is an abuse of discretion standard, and our courts have described an abuse of discretion in several ways. A ruling in which no reasonable person would take the view adopted by the court, a ruling made without the employment of conscientious judgment, or one which exceeded the bounds of reason. And the state is not here today arguing that this was a perfect trial, and it is well settled that defendants are not, I can't think of the word, I apologize, but there's no constitutional right to a perfect trial, that they have a right to a fair trial. There is a right to confrontation, though. There is, and I will get to that argument. That is the first argument that I made, that a trial court can grant a severance in one of two situations. And in this case, it seems the defendant has argued both of those reasons. The first is when a co-defendant has made hearsay implications, hearsay admissions implicating the defendant. And obviously because this has denied, in his argument, his constitutional right of confrontation. And secondly, the second reason for a severance would be when the defenses are so antagonistic that a severance is imperative to assure a fair trial. And so when we talk about the first issue of confrontation, I think there's two things that we need to focus on in light of each other. The first one that I would argue is that TOR's statements to police, his out-of-court statements that were ultimately brought into trial through Candler's testimony, did not specifically implicate defendant and were admitted as evidence only against Torres. Let me stop you. Let's break that down. Yes, Your Honor. They do not implicate the defendant. Are you saying that he didn't specifically say he did it? Is that what you mean when you say that? Well, I mean, he clearly did not do that. That's not required, is it? It is not required, no. Okay. But the reason why I want to combine these arguments is I think that when I make that argument in combination with the jury's limiting instruction, what my argument is that Torres' statements did not implicate defendant to the level that the jury's instructions did not cure that effect. So you're conceding that they did implicate him? I would not be conceding that, no. Okay, well, that's what it sounded like. You said not to the level. You said they don't implicate him to the level that wasn't able to be corrected by the jury instructions. So was there implication or not? Well, I mean, that is something that I think is in the discretion of the court because I think, you know, the definition of implicate, what does it mean to implicate someone? If we look at the pretrial hearing, what exactly did counsel for Torres say that they were going to show? And he said a few things. He says that the co-defendants argued that their defenses would be antagonistic because, he said, defendant was Torres' supervisor, which is fine, but that was evidence that was presented in all sorts of different ways during the trial. Well, let me stop you. I think the problem is the statement he made about he said we need to stop and fix this tire and I want you to get out of here. And I saw him meeting with three unknown Hispanics. And by the way, he did that on another trip that I took with him. And so doesn't that implicate him, that statement? I think it can make an argument either way. I think it's a fair argument to say that, yeah, that does implicate. But I think it's also fair in the discretion of the trial court that they could look at that and say, no, it doesn't implicate defendant, especially in light of, as you raised your honor earlier, the law books showed that clearly what he was doing was sleeping. He was in the sleeper at the time. So rather than actually implicate the co-defendant, I believe what the trial court in its discretion found was, no, this doesn't implicate defendant in this case. What it does is it shows that Torres is not being truthful, that he's making up facts, that he's making up different situations to prove his innocence, to further himself and distance himself from the situation. Well, that's a pretty good spin. Okay. If I'm told to go get lost or go get lunch and, oh, by the way, I saw him speaking to three Hispanics, I mean, to me he's implicating he did it. He was there. He was the one who loaded it. He was the one who put the dope in the truck. That sounds pretty reasonable to me as to why that would be suggested. Okay. And I understand that argument as well. And I guess I continue to emphasize that under the discretion of the court, that I believe that they also could have viewed that in light of the other evidence, that what he's doing is just trying to distance himself from the situation by creating facts. Well, and you, I think, suggested that there may have been some implication, but it didn't rise to the level where the jury instruction didn't appear. Right. Okay. Let's start at the level where it does implicate Vilchow. Okay. Okay. Let's just let that be a given here. But it's not the sole purpose for offering the testimony. But he never, Torres never directly points the finger at Vilchow. And I think in closing, I don't have the exact words here in front of me, but Torres' lawyer in closing says the state doesn't have evidence that Vilchow knew there were drugs in the truck. So, I mean, he's not, I don't think we can say that Torres is directly pointing the finger at Vilchow here either. So we've got some evidence that's been introduced during the course of this case that implicates Vilchow, and it only happened because the two cases were consolidated. The hearsay statements of Torres coming in through Candler, Torres doesn't testify, therefore Vilchow isn't able to cross-examine on those statements. Okay. So you have the implicating statements of Torres, but not direct finger pointing. So is this where you come down? Is this your argument that essentially abuse of discretion may be not an ideal situation, but it's discretionary and not enough for this court to reverse? That would be a very good summation of the general argument that I'm making. I feel like what you just said was probably specifically toward the antagonistic argument, that I believe that clearly in their discretion that these were not, they could have easily found reasonably that these were not antagonistic defenses. And simply because counsel for Torres said, we are directly pointing the finger at them, does not mean that they directly pointed the finger at them. So I think that is my argument with that, regard to that. When you say that we are going to, in a way, assume that he was, when Torres made these statements, regarding that our defendant met with the three Hispanic men. If your honors want to assume that he is implicating them, then my argument would be that the court cured any potential prejudice to defendant by instructing the jury that any statement made by one defendant may not be considered by you against another defendant. And the state is also well aware that when constitutional rights are at issue, the courts have found that limiting instructions are not always adequate. But I believe that in light of the minimal amount of potential prejudice in this case, the limiting instructions were effective in this case. It was reasonable in this particular case, given the particular situation, circumstances, and the statements that were made, it was reasonable because the instructions were clear, and I think the circumstances are such that the jury could have reasonably been expected to follow those instructions. And in the Supreme Court case of Bruton, which I believe we both cited in our briefs, the Supreme Court says that the trial court must ultimately make a determination whether the risk that the jury will not or cannot follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. And I do not believe that we have such a case here. In his reply brief, the defendant made the comment that the only thing that separated these two defendants was Torres' statements that the defendant met with these three Hispanic men. And I do not believe that that is true. There's a whole bunch of things that separated these two defendants at trial, and her argument was, why did Torres ultimately get off, and the defendant found guilty if everything was the same? It must have been these statements that Torres saw the defendant meet with these three Hispanic men. But at trial, we saw, and I believe that this goes to our, that even without this evidence, this goes to my overwhelming argument, that even without this evidence, even if we take out Candler's testimony that Torres said the defendant met with these three Hispanic men, if we take that out, then I believe the defendant's conviction can be affirmed because the court can conclude that the error was harmless beyond reasonable doubt. And so if we take that out, we see that the state provided evidence that the defendant was training Torres. He was the trainer. That was brought in over and over again, that he was in control, that he was the one that picked up the load, that he was the one who witnessed the picking up of the load, that he locked the locks to the trailer after the load was picked up. I mean, we see all that stuff in evidence totally apart from any out-of-state statement, out-of-court statements that Torres made. What was the evidence that he picked up the load? Are you going back to the log books again? No, actually, the defendant himself testified, and I have this. He testified that he picked it up. He didn't have a license. He didn't have a license. He was allowed to pick it up by... That's right. Sandoval. Right. He said that he was the one who drove. I think Sandoval testified that she allowed the defendant to drive because the defendant was closer to where the load was to be picked up. The defendant went and picked up the load. He closed the door. He looked at it. He locked the lock. That was the defendant specifically personally testifying to that during direct examination. He also testified that while he picked up the truck, he said that I was doing this while my license was suspended. We also know that, as I said, that Torres had possession of the keys during the loading. The defendant put the load locks and closed the trailer doors. Officer Sweeney testified that a trainer without a valid license is basically meaningless. There would be no purpose to have a trainer who's training someone to drive a commercial load who didn't have a driver's license. That would be meaningless. And so I think what can easily be inferred there is, okay, there is a reason why the defendant needed to be on this trip. He didn't have a license. It didn't make any sense for him to be training someone to drive without a license. There's a reason why he needed to be on this trip.  And finally, when Candler interviewed the defendant, he talked about how he interviewed the defendant and he talked about how he interviewed Torres. And he said when he interviewed the defendant, the defendant was very brief and he simply stated that he had no knowledge of anything going on and his only purpose was to train the driver. He was very specific. Candler testified that he thought he was very short and simply stated. And there must have been a reason why the defendant needed to be on these trips. So I think there's all sorts of evidence that, apart from these out-of-court statements, that separates the defendant's case from Torres' case. Evidence also showed that the defendant instructed Torres, and the defendant testified to this too, and he said he shouldn't have done it, but the defendant instructed Torres to falsify the law books. What ultimately separated them wasn't that the defendant met with these three Hispanic men. What ultimately separated them, I believe, is that the defendant was in control. It was the trainer-trainee relationship. And I believe that's what makes this evidence against defendant overwhelming. The state's entire case was predicated on the idea that the defendant picked up an empty trailer, maintained control over that trailer, that later became a trailer contained kilos of drugs. And the only reasonable thing that you can conclude from that is the defendant was in control of it and he knew that drugs were put on that trailer. The defendant was the one who picked up the trailer, picked up the load, and supervised an entire trip from California to Illinois. And so for these reasons, even if the defendant's fundamental constitutional rights were violated, the error was harmless beyond a reasonable doubt. The jury's limiting instructions cured any prejudice. And I believe that, and I did not get to this, because I believe that it's the stronger, probably, of the two arguments, is that there simply was not antagonistic defenses presented in this case. Although Torres' counsel said, you know what, we're going to point the finger, ultimately they didn't really do that. And I think that is most, and as defense counsel argued... I guess I'll ask Ms. Willum this, but did the trial court even consider the confrontation issue, or did the trial court simply focus on the antagonistic defenses? In their written order, it seems that they only addressed the antagonistic defenses. They did not write anything about the confrontational issue. Does that matter? I do not believe it matters, because I believe that it was argued, the confrontational issue was argued by Torres' counsel. Vilches ultimately, Vilches' defendant in this case, ultimately adopted that motion. And that those were both argued to the trial court. And I believe that the order, the trial court denying that motion, it can be reasonably inferred that they considered all arguments made. And so I believe that... Well, it just worries me, because it almost seems like I don't know for sure if the trial court considered co-defendant had made statements, that those statements were going to come into evidence, and co-defendant may not testify, therefore there's no confrontation. And if the court didn't even consider that, given our standard of review, does that place us in a position where we need to reverse? I do not believe so, because I think that those arguments, those same arguments that are being made here, were specifically made to the trial court. So you believe the record reflects that those arguments were made? They were, yes, for sure. And again, the prejudice due to the lack of the ability to confront Torres regarding his statements. Well, what I believe is that Torres argued, and this is in the supplement to the record, pages 5 and 6, that Torres argued that if defendant chose not to testify at trial, Torres would be denied his right to confront defendant regarding his prior statements. So that's not quite the same? Well, I don't mean, I'm saying that by adopting that motion, the defendant was essentially making the same argument regarding testimony on their end. I think a fair argument can be made there. But, I mean, as far as what you're asking, did defendant specifically say that they might not get to confront? No, that specific argument was not made. But I do believe by adopting Torres' motion, that they did adopt the same argument, the same confrontational argument. So, in closing, the State... Well, let me... Yes, Your Honor. I don't have it closed just yet. One other thing, it hasn't been addressed, prejudice to Vilches in being cross-examined twice, because with the joinder, he's cross-examined not only by the State, but then by Torres' attorney. Your view is that he was not prejudiced by that? My view, and they did, defendant spent some time in her brief, and I addressed that in my brief as well, defendant actually described this as rigorous cross-examination from his co-defendant. And I think that if we look at that, I think we also see, if we actually look at the trial, which... And again, this goes back to an earlier argument, that the trial court is placed in a situation when they're hearing arguments and when they're ruling on this order, they can't jump ahead and look in the future and see exactly what's going to happen at trial. I mean, it's a tough situation to put a trial court in, because we're saying, not only do you need to predict, but you also need to make sure that prediction is right, or we're going to throw it out. So I think that no argument was made by either counsel, in any of the pre-trial hearings, that there would be any sort of issue regarding cross-examination of the defendant. But directly to your question, Torres' counsel asked defendant if he was the one who put the load locks on the truck and trailer door. That was one of the questions he asked. Torres' counsel then continued questioning the defendant about what he did with the keys after locking the load. And I believe that when this is viewed in light of all the other testimony, that in cross-examination, defendant or any of the counsel did not elicit any testimony that was already not presented by defendant in his initial witness testimony or by another defendant during trial. And that's what I argued in my brief. Again, you can claim it's rigorous cross-examination, but I think when we actually look at the facts and look at the questions and look at the answers, it did not elicit any further testimony that was not already presented to the jury in some manner, in some form, during the rest of the trial. So in closing, the state argued that in this case, any potential prejudice that the defendant had in this case was cured by the limiting instructions given to the jury. That the evidence against defendant was overwhelming, irregardless of the testimony given by Candler. And finally, the defendants in this case did not present antagonistic defenses. So I would ask this court to please affirm. Thank you.  Rebuttal, please. Your Honor, as to the constitutional issue, it was not clearly presented. The trial court was presented with, these are going to be antagonistic defenses. Mr. Torres is going to be blaming Mr. Vilches. These seven ways we are going to be blaming him. The court could not have looked into the future to see exactly how this trial would proceed. There were several ways that Mr. Torres' statements could have come in at trial. He could have taken the stand to testify. He could have sat back like he did and let Officer Candler testify for them. So the issue of confrontation and the way that it evolved here at trial was not clearly before the trial court. Again, you can look at the actions in the trial court as illustrative of how the defendant was prejudiced in this case. And I believe that this court can find that the trial court, by not anticipating the great confrontation issues that Vilches would be forced to contend with in this trial abused his discretion, especially when faced with such an antagonistic defense. With so much proof, I'm going to be pointing the finger over at Mr. Vilches. I'm going to use these facts and I'm going to point the finger. When the State was talking about what does it mean to implicate, I think a great definition of implicate is when Mr. Torres' attorney says, we are pointing the finger at Mr. Vilches. We are pointing the finger directly at Mr. Vilches. He implicated him. He continued to do so. He did so in opening. He did so in closing. Just like he told the trial court he was going to do at that motion to consolidate. I will be implicating this man. And as far as prejudice to Mr. Vilches from being cross-examined twice, again, this is the situation that this court looked at or the Supreme Court looked at in the Bean case. And the case said in a situation like that, where Bean's co-defendant Byron mounted an early and continued attack on Mr. Bean. It was him. It wasn't me. It was him. It wasn't me. When that kind of attack is mounted by the defense, by the co-counsel, it is so much more damaging than anything that can be said by the State and by anything that can be said by the trial court. And eliminating instruction is not going to be sufficient to cure that kind of prejudice. And just going through the facts one more time in light of the overwhelming evidence, there is not overwhelming evidence of guilt here. And if we want to look again at Mr. Vilches' testimony, Mr. Vilches did testify that he put the load locks on. Those are the locks within the trailer that hold the yogurt into place so it doesn't shift as they're driving. And then he waited there for Mr. Torres. They drove back to the truck yard. At the truck yard, Mr. Vilches explained that the key to the lock on the back of the trailer was on the key ring. These two keys were always together. The truck lock and the ignition key are kept together. And when he left the truck to pack for the trip, he left the keys with Mr. Torres. And whenever he left the truck to shower or to eat, the truck was locked and Torres, the driver, retained the keys. I simply... There is simply not overwhelming evidence of Mr. Vilches' guilt in this case. And I would ask that this court recognize that Mr. Vilches was denied his right to a fair trial when he was forced to trial with a co-defendant who continually said, he did it. I didn't do it. He did it. And I would ask that this court reverse his conviction and remand for a new trial. Counsel, I have one question. Refresh my memory. Wasn't there a period of time when Torres was with the truck alone and he slept in the truck and Mr. Vilches was gone for a significant period of time? That is Mr. Vilches' testimony that when they... He loaded the truck. He put the load locks on in place. He waited at Sun Valley Dairy for Mr. Vilches to arrive... I'm sorry, Mr. Torres to arrive because Mr. Vilches did not want to drive a full truck back to the load... or to the... to their shop. So they drove back to the yard and at that time they realized they were going to have to fix the tire and Mr. Vilches, because he had left suddenly to pick up this load, needed to go back to his house and pick up his clothing. His wife came and picked him up. He left the keys, the key ring with both keys to the lock and to the ignition and when he returned, Mr. Torres was sleeping inside the truck. He clearly had access to the truck during that time by himself. Thank you. Thanks to both of you, the case is submitted and the court stands in recess.